Thank you, Your Honor. May it please the Court. My name is Thomas Birch, and I supervise the Appellate Clinic at the University of Georgia. Appointed by this Court to represent Mr. David Hill. Today, one of our third-year students- Could you get closer to the microphone? Yes, Your Honor. I'm sorry. You can raise the podium if you want. I'll just duck down. How about that? Okay. My name is Thomas Birch, and I supervise the Appellate Clinic at the University of Georgia. Today, one of our third-year students will be presenting an argument on our behalf, and I'll be sitting at counsel table. Thank you very much, Your Honors. And thank you. We really appreciate the pro bono efforts of counsel and the students. It's quite helpful to the Court. So we appreciate it very much. Thank you, Your Honor. Thank you, Your Honor. And may it please the Court. My name is Alex Pilgrim, and I represent the Appellant, Mr. David Hill. And at this time, I would like to reserve two minutes for rebuttal. This Court should reverse the grant of summary judgment below for two reasons. First, under the Supreme Court's decision in Vitek v. Jones, Mr. Hill was entitled to a hearing before his transfer to a mental health facility for involuntary treatment. And second, at a minimum, he should have been provided such a hearing shortly after his transfer. Counsel, there have been at least a couple of decisions after Vitek that have held or at least suggested that a temporary transfer does not call into play all of the protections of the Vitek opinion. So in view of that, why aren't the defendants entitled to qualified immunity? That is, that it wasn't clearly established that a temporary transfer required those procedures. Your Honor, the Vitek opinion itself does not speak to temporary transfers. And indeed – But that's exactly my point. It didn't talk about temporary transfers, so how could it have been clearly established? Your Honor, the qualified immunity defense for the individual officers would be relevant to the damages claims against them. However, I would like to emphasize that they would not affect Mr. Hill's claim for injunctive relief for future transfers to the mental health unit. However, the Vitek opinion deals with the liberty interest in avoiding the lack of a pre-transfer hearing before the transfer ever occurs in the first place. And surely this does not turn on the length of the transfer at the outset. Also, in this case, Your Honor, Mr. Hill's transfer to the mental health unit was not designated as temporary before he was transferred there. Indeed, it seems as if it wasn't designated. I thought he was transferred for evaluation and not for treatment. Is that incorrect? No, Your Honor. Upon his arrival in the mental health unit, he was provided an individualized treatment plan. And indeed, by statute, the IDOC's mental health unit is for persons requiring diagnostic services and treatment in a maximum security setting. And the IDOC's guidelines for the mental health unit state that its purpose is to initiate appropriate treatment. And therefore, Mr. Hill's transfer was for the purposes of treatment. And indeed, he was being evaluated prior to his transfer during his time on suicide watch. And therefore, the only purpose for the transfer could have been to initiate treatment. While he was there, they tapered him off of his preexisting prescriptions for Paxil and Elevil in order to assess the effects of altering his medication. And this was, in light of that, he was being treated during his time there, not merely evaluated. And therefore, the protections of VITEC do come into play because he was transferred to a mental health facility for psychiatric treatment over his objection, Your Honor. And the VITEC also recognized a second liberty interest that inmates have under the Due Process Clause when the statutes of a particular state create an expectation that the inmate will only be transferred to a mental health facility under certain conditions. And the Idaho Code is similar to the Nebraska statute at issue in VITEC in all relevant respects. In VITEC, the prisoner had an expectation arising from Nebraska statutes that he would only be transferred when he was designated as mentally ill. And the Department of Corrections determined that he could not receive adequate treatment at his current facility. In such situations, because there was an expectation that these criteria would be met before his transfer, the Due Process Clause required the state to follow adequate procedures, including a hearing, to determine these prerequisite facts. And Idaho Code 66-1301 and Idaho Code 66-1304 create similar requirements before an inmate can be transferred to Idaho's mental health unit. What happened here, does this constitute the imposition of atypical and significant hardship under Sandan? Yes, Your Honor. VITEC itself held that a transfer to a mental health facility for involuntary treatment is such an atypical hardship over and above the ordinary incidence of prison life. And this is for two reasons. First, because of the stigma associated with the label of mentally ill, which is over and above any stigma that attaches from being in the prison population in the first place. And also from the being subjected to involuntary psychiatric treatment for mental illness. And both of those things occurred here in Mr. Hill's case. Didn't he sign off or sign some sort of a waiver agreeing to be treated by the contract providers? Mr. Hill signed a consent for treatment form after his transfer to the mental health unit. However, the treatment form, which can be found on page 121 of the excerpt of record, states that the inmate can revoke his consent by objecting to any particular treatment. And the state concedes that he did not agree with his personalized treatment plan, which he received on April 14th, shortly after his transfer. Is it important to our analysis that in VITEC the person was transferred to a mental hospital and in this instance your client remained in the Department of Corrections, just simply a sort of medical unit within the prison system? No, Your Honor. That distinction is not relevant to the court's analysis here. Why? Because the liberty interest at stake arises from the fact that the state is transferring the inmate to a mental health facility and subjecting him to involuntary treatment. But it's sort of, I guess, a version of Judge Mims' question, which is, you know, if a person is transferred within the prison from one area to another area, let's say it's suspected they have tuberculosis and they're isolated in a medical unit, they're still within the prison system. It's not like sending them off somewhere. So I guess I'm not sure why it shouldn't matter. Your Honor, it is because the liberty interest at stake is the same. Because of the two factors that were important in VITEC, the stigma of being labeled mentally ill and placed within a mental institution, which, whether within the Department of Corrections or without, that stigma remains. And the prisoner was also subjected to involuntary treatment during his time there. Indeed, the Idaho Code 66-1301 states that the mental health unit must be identifiably separate and apart from the ordinary prison population. And therefore, Mr. Hill was being labeled as distinct and separate from an ordinary inmate. And furthermore, Your Honor, there are cases in other federal circuits that have recognized that VITEC is applicable to intra-prison transfers, if this makes sense. It may be called such, including Bowe v. Woodard in the Fourth Circuit. And this is because the liberty interests at stake are the same in this case. And if I may, Your Honor, I would like to reserve the rest of my time. Good morning. I am Yvonne Dunbar and I represent the appellees. First, I want to let the Court know that VITEC is not applicable to this case. Unlike in VITEC, this Court is not reviewing an indefinite transfer or commitment into a mental hospital because of a diagnosed mental disease or defect. Instead, this matter is akin to the Eighth Circuit case, U.S. v. Jones. As in U.S. v. Jones, this Court is faced merely with an involuntary transfer from one prison to another, to facilitate a psychiatric or psychological evaluation, and to obtain a mental health diagnosis. As the Eighth Circuit Court held, liberty interests are not implicated by such a transfer, and the Due Process Clause does not prohibit such a transfer. Under your theory, what would have to happen before he was entitled to a hearing, to a liberty interest hearing? Well, as in U.S. v. Jones, what the Court explained was that before a hearing is required, there must be a diagnosis and a determination by the IDOC that a commitment may be the next step. And it's when there is a potential for a commitment. Here, there wasn't a commitment. It was always intended to be a temporary transfer to evaluate and diagnose Mr. Hill. Was there a diagnosis here and they started a course of treatment? There was not yet a diagnosis. There were prior diagnoses, but he had started spiraling out of control. He had, during a short period of time where he was admitted into Suicide Watch on four different occasions, and he just kept spiraling. So the IDOC did what needed to be done to protect this inmate from himself. Otherwise, we might be here on an Eighth Amendment claim, as opposed to... Well, those two things are not mutually exclusive. That is, in an emergency, there could be a post-deprivation hearing, even if he had to be dealt with immediately. So those two things are not, they don't really contradict each other. Right. And here, there was an emergent situation. And the only evidence on point on that issue is Dr. Craig's statement and his analysis that utilized his own professional judgment. There's been no showing of bad faith to say that the situation wasn't emergent, including that there was no showing or argument that his decisions were a substantial departure from the applicable standards of care. What is your response to counsel's argument that the injunctive, the request for injunctive relief survives? Well, first of all, that wasn't pled adequately, nor was it argued adequately below. In addition to that, it does not survive. Mr. Hill has not been diagnosed with a mental illness. In fact, when he was discharged from the acute mental health unit, they specifically said he does not suffer from a mental illness. So at this point, there's no evidence to show that he's at risk of being committed into any sort of mental health facility or mental hospital. And here also... So you're saying it's an entirely speculative claim? Is that your argument? Yes, Your Honor. That is one of the arguments, one of the two arguments. First of all, that is, that's the first one. And the second one is the fact that there's no chance that his due process rights will be violated, because under U.S. v. Jones, a temporary transfer can occur if an evaluation is necessary in the future. But it has to be a temporary transfer, and it has to be for the purposes of evaluation and diagnoses. And that is what happened here. There's no... Because of his lack of mental illness, there's no chance that he's going to be committed or no evidence supporting such a finding. And as this court mentioned, in addition to the fact that there was no due process clause violation, the appellees are also entitled to qualified immunity because the case law was not clearly established. It was not clearly established. He says that's only on the monetary claims, not on the injunctive claims. You agree with that, don't you?  But also with regard to the injunctive relief claims, it is our position that those are speculative. And also were not even properly raised below. So going back to the temporary nature... Oh, I do want to point out, first of all, counsel has mentioned IDOC guidelines. Those are not the law. They weren't properly admitted into evidence below. I cited case law in Idaho, which shows that they cannot be utilized to support any sort of legal action against the IDOC because they have not been adopted by the Idaho administrative rules. Also, the citations to the 66-301 subsection, like the district court said in this case, there's no evidence that the MHU is a facility within those statutes or that they apply. And then the arguments with regard to 66-1301 at sequence, also, they were not properly raised below. And in addition to that, they do not create a liberty interest like what occurred in Vitek. In fact, they're more akin to the statutes that were addressed in U.S. v. Jones, where because it's a temporary transfer, there is no due process, right? So going back to the temporary nature and the evaluation, if you look at what was done, counsel has mentioned his position, or at least it seems that they are arguing that an evaluation cannot involve any actual work by a medical professional or a mental health professional. They're apparently just supposed to sit and look at the inmate and see what's going on. That's not the case. That's not the proper standard of care for a mental health professional. They do have to do some work, and that is why the medications were tapered off so they could get a baseline diagnostic of Mr. Hill. That's why other treatment or evaluation-type work was done to determine where, what was plaguing Mr. Hill, what was causing this spiraling of his behavior, what was causing his behavioral outbursts. The guidelines for Unit C do state that there will be more than an evaluation. There's to establish an individualized treatment plan. It doesn't say to carry it out forever, but it does establish a treatment plan and stabilize the person on their medications. So there is some amount of treatment that seems to be built in. It's part of attempting to diagnose what his issues are. Whether he's an Access I individual with a mental illness or an Access II individual with a personality disorder, there has to be work done to be able to adequately diagnose someone. Otherwise, you can't even have a hearing to determine if an individual should be committed to a mental hospital. You have to have the work beforehand. And to say that him being reviewed by clinicians is sufficient isn't true. They don't have the type of qualifications that is available by that mental health team. The best mental health team available is where Mr. Hill was transferred to be evaluated by those individuals in the MHU. So really, the IDOC should be commended for what it has done. Because it prevented a potential catastrophic event by an individual that was spiraling out of control. That seems unresponsive to the claim, though, because I don't think the argument is that he shouldn't have been sent there at all. I think the argument is he should have been sent there and received a hearing to make sure it was the right thing to do in his case. Yeah, and I think that's where USV Jones is very important. What they have said, that although a transfer for evaluation may provide some inconvenience to a prisoner, the temporary interruption does not give rise to a level of a due process violation. It is not what is expected for a due process violation. It's not what is expected when there is a liberty interest implicated. So I think it's going back to that, the fact that this is just a temporary transfer to fully evaluate an individual and determine what his diagnoses are so an appropriate course of treatment can be provided. In the amount of time, I do want to point this out. In USV Jones, the prisoners, one was the temporary time frame was three months, another one was two months, and here we have a time frame of 43 days, 12 of which were actually spent in the MHU. The remainder of that 43 days was actually spent in the medical unit, which is separate and distinct from the MHU. It's part of the other units at the prison. And Jones also explained that there is little or no danger of mandatory behavioral modifications in a transfer for evaluation, and the stigma attached to such a transfer could be no greater than if the evaluation were done at the prisoner's original place of confinement. And that's what we have here. While Mr. Hill has claimed that he had these harsh behavioral modifications, that's not what the burden actually is. He has to show that the behavioral modifications were different than what he otherwise would have had in a normal prison setting, and he hasn't made that showing here. In fact, he had a behavioral contract prior to going to the MHU. When he was discharged out of the MHU, he had a behavioral plan again then as well. Thank you, Counsel. Thank you. Do you have some rebuttal time? Thank you, Your Honors. First, with regard to the Jones case relied upon by the IDOC, even if this court were to adopt the rule of that case, which this court has not yet, the holding is simply inapplicable here because the holding of Jones was that a temporary evaluative transfer does not implicate VITEC because there is no risk of the stigma of mental illness and the mandatory behavioral modification and treatment that were at issue in VITEC. However, even if those things were not present within Jones, they are present here. Mr. Hill was deemed mentally ill in the process of his transfer to the mental health unit, as the diagnoses in his mental health referral show. And he was also subjected to treatment while he was there, a personalized treatment plan and alterations to his medication. And therefore, the liberty interest at stake in VITEC was implicated here. Furthermore, Your Honor, the 40 days that Mr. Hill was in the mental health unit surely are— Do you disagree with Counsel that he only spent 12 days physically in the mental health unit? Yes, Your Honor. I do contest that. The lower court found in its order at page 22 of the excerpt of record that Mr. Hill was in the mental health unit from April 11th to May 27th, 2011. And indeed, the State's own witness, Dr. Richard Craig, made the same statement in his affidavit at page 69 of the record, stating that Mr. Hill was in the mental health unit from April 12th to May 27th. And even if Mr. Hill were moved between different sections or facilities within the mental health unit, he was still in a facility for mental health treatment that was separate and apart from the ordinary prison population. Thank you. Thank you. Your time has expired. Thank you, Your Honor. The case just argued is submitted, and we very much appreciate the helpful arguments from both sides.
judges: Tashima, Graber, Mihm